IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PROGRESSIVE NORTHWESTERN INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>KOREY WOODS, et al.,<br><br>Defendants. | Case No. 6:22-cv-01102-HLT-GEB |

**MEMORANDUM AND ORDER**

This is a declaratory-judgment action regarding the amount of underinsured motorist ("UIM") coverage available under an insurance policy. The plaintiff is Progressive Northwestern Insurance Company, which issued the relevant policy. The defendants are an individual who was injured in the underlying accident, as well as the estates of two individuals who were unfortunately killed. The accident was caused in part by a group of motorcyclists, five of whom were underinsured. The issue is whether Progressive is obligated to pay the UIM policy limit or pay in excess of that amount to account for the multiple tortfeasors. The Court finds that the unambiguous language of the policy, which is the same as Kansas law, requires Progressive to pay only the UIM policy limit.

I.   BACKGROUND

The parties have stipulated that discovery is not needed in this case. The agreed stipulated facts are outlined here. *See* Doc. 21.

On December 17, 2021, Latricia Phillips was driving a Ford Escape westbound on US-50. Korey Woods and Angela Daniels were passengers. A Chevrolet Silverado driven by Luke Richmeier, who is not a party to this case, was driving eastbound on US-50.

A group of several motorcyclists was also in the area. The motorcyclists began traveling westbound in the eastbound lane as they attempted to pass another vehicle. Richmeier steered to the south to avoid the motorcyclists, then overcorrected, re-entered the highway, and crossed the centerline. Richmeier's truck was hit by the Ford Escape driven by Phillips. Phillips and Daniels were killed. Woods was seriously injured. Woods and the estates of Phillips and Daniels are named as defendants in this case.[1]

Richmeier was insured under two policies with a combined coverage of $1,500,000. That amount has been tendered to Defendants. The motorcyclists carried liability coverage in various amounts. Relevant here, five of the motorcyclists were underinsured and had liability limits of $25,000 each person/$50,000 each accident. These amounts have been tendered to Defendants under each of the five underinsured motorcyclists' policies. The parties have agreed to apportionment of funds, except as to the payments under Richmeier's policies. Apportionment is not at issue here.

Phillips was insured by Progressive Automobile Policy No. 945450536 (the "Policy"). The Policy is the subject of this case. As stated on the declarations page, the Policy provides for UIM coverage in the amount of $50,000 each person/$100,000 each accident. Doc. 25-8 at 1. On January 14, 2022, Progressive proactively tendered the policy limit of $50,000 each person/$100,000 each accident in UIM coverage to resolve the UIM claims by Woods and the estates of Phillips and Daniels based on the involvement of the five underinsured motorcyclists. The parties agree that "the aggregate value of the bodily injury claims of Latricia Phillips, Angela Daniels, and Korey

---

[1] The motion for summary judgment was filed on behalf of Woods, but it appears to argue on behalf of the estates of Phillips and Daniels as well. Accordingly the Court refers to "Defendants" throughout.

2

Woods meets or exceeds the Each Accident liability limits of all known insurance policies, including the policies described herein."

The UIM provision of the Policy states in relevant part:

**PART III—UNINSURED/UNDERINSURED MOTORIST COVERAGE**

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay for damages, other than punitive or exemplary damages, that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** because of **bodily injury**:

1. sustained by an **insured person**;
2. caused by an accident; and
3. arising out of the ownership, maintenance or use of an **uninsured motor vehicle** or **underinsured motor vehicle**.

. . .

When used in this Part III:

. . .

2. "**Underinsured motor vehicle**" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident, but:

   a. its limit of liability for **bodily injury** is less than the coverage limit for Underinsured Motorist Coverage shown on the **declarations page**; or
   b. the proceeds of the liability bond or policy available for **bodily injury** to the **insured person**, after payment to other injured persons, is less than the coverage limit for Underinsured Motorist Coverage shown on the **declarations page**.

   An "**underinsured motor vehicle**" does not include any vehicle or equipment:

3

    a. owned by **you**, a **relative**, or a **rated resident** or furnished or available for the regular use of **you**, a **relative**, or a **rated resident**;
    b. owned by any governmental unit or agency;
    c. operated on rails or crawler treads;
    d. designed mainly for use off public roads, while not on public roads;
    e. while located for use as a residence or premises;

. . .

**LIMITS OF LIABILITY**

The limit of liability shown on the **declarations page** for Uninsured/Underinsured Motorist Coverage is the most **we** will pay regardless of the number of:

1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If your **declarations page** shows a split limit:

1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person; and
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured person** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

. . .

The amount of damages that an **insured person** is entitled to recover under this Part III because of **bodily injury** shall be reduced by all sums:

4

> 1. paid because of **bodily injury** under Part I—Liability To Others;
> 2. paid or payable under Part II(A)—Personal Injury Protection Coverage or Part II(B)—Medical Payments Coverage; and
> 3. paid or payable because of **bodily injury** under any of the following or similar laws:
>
>    a. workers' compensation law; or
>    b. disability benefits law.
>
> No one will be entitled to duplicate payments for the same elements of damages.
>
> If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

*Id*. at 20-23.

A dispute has arisen between Defendants and Progressive about the amount of UIM benefits available under Kansas law. Progressive filed this declaratory-judgment action to resolve the issue. The parties agreed to resolve the matter on cross motions for summary judgment based on the above stipulated facts. *See* Doc. 16.

## II.   STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As discussed above, the parties have stipulated to the material facts but disagree on the legal consequences of those facts.

## III.   ANALYSIS

Neither party disputes that five of the motorcyclists are underinsured motorists under the Policy or that Defendants are entitled to UIM coverage based on the role of those five motorcyclists in the accident. The dispute in this case surrounds the maximum amount Progressive owes under the UIM provision of the Policy. Because the parties stipulate that the aggregate value of

5

Defendants' bodily injury claims meet or exceed the per accident liability limits of all known policies, the Court focuses on the per accident limit of the Policy, but the same analysis would apply to the per person limit. Progressive contends that the Policy and Kansas law provide for a UIM coverage limit of $100,000 per accident, "regardless of the number of insureds, UIM claims, or vehicles involved in the underlying accident." Doc. 25 at 1. Defendants argue that Kansas law requires that UIM benefits be calculated separately for each of the five underinsured motorcyclists, which means that Progressive owes a total amount of $250,000.[2]

Insurance policies are contracts, and the interpretation of a contract is a question of law. *BancInsure, Inc. v. F.D.I.C.*, 796 F.3d 1226, 1233 (10th Cir. 2015). A court seeks to ascertain the intent of the parties in interpreting a policy. *Id.* Where the language is unambiguous, a court should enforce it as written. *Id.* Likewise, statutory interpretation begins with the language of the statute. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997). Where the language is plain and unambiguous, interpretation of the statute starts and ends there. *See id.*

The Policy states that Progressive will pay damages an insured person is entitled to recover from the operator of an underinsured motor vehicle. Doc. 25-8 at 20. The policy includes a provision outlining "LIMITS OF LIABILITY." *Id.* at 22. It states:

> The limit of liability shown on the **declarations page** for Uninsured/Underinsured Motorist Coverage is the most **we** will pay regardless of the number of:
>
> 1. claims made;
> 2. **covered autos**;
> 3. **insured persons**;

---

[2] Based on the fact that Progressive has offered the full $100,000 per accident UIM limit under the Policy, *see* Doc. 31 at 4, it does not appear that Progressive is seeking any offset based on contributions from the insurers of the five underinsured motorcyclists. But Defendants do include those contributions in their calculation. Each of the underinsured motorcyclists had insurance policies that provided a maximum of $50,000 per accident. To calculate UIM coverage, this amount is subtracted from the UIM limits of the Policy ($100,000 per accident), leaving $50,000 in UIM proceeds. Defendants claim this calculation must be done separately for each of the five underinsured motorcyclists, which would mean that Progressive must pay Defendants $250,000 (5 x $50,000).

6

      4. lawsuits brought;
      5. vehicles involved in the accident; or
      6. premiums paid.

*Id.* The declarations page of the Policy states that the uninsured/underinsured motorist limit is $50,000 per person and $100,000 per accident. *Id.* at 1. The "LIMITS OF LIABILITY" provision is substantively similar to K.S.A. § 40-284(d), which states that uninsured and underinsured motorist coverage "shall be limited to the extent that the total limits available cannot exceed the highest limits of any single applicable policy, regardless of the number of policies involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid or vehicles involved in an accident." The limitation stated in K.S.A. § 40-284(d) applies regardless of whether it is incorporated into a policy. *See Eidemiller v. State Farm Mut. Ins. Co.*, 933 P.2d 748, 756 (Kan. 1997).

Based on the plain language of the Policy, which is also in line with Kansas law, the "most" Progressive agreed to pay under the UIM provision is $100,000 per accident. This is regardless of the number of claims made or vehicles involved in the accident. The plain language of the Policy therefore supports Progressive's position that the UIM coverage limit is $100,000.[3]

Caselaw supports this conclusion. In *Brown v. Farmers Insurance Co.*, the plaintiff was injured in a one-car accident involving an uninsured driver. 65 P.3d 1063, 1065 (Kan. Ct. App. 2003). Brown received the limit of uninsured motorist coverage ($100,000) under her mother's policy. *Id.* Brown then sought an additional $100,000 in <u>underinsured</u> coverage on the theory that

---

[3] Defendants complain that Progressive has not outlined a precise calculation method to employ in calculating the UIM benefits. *See* Doc. 29 at 9; Doc. 30 at 4-5. But given that Progressive has offered the full policy limit of $100,000, the method of calculation seems irrelevant in this case. *See Ill. Emcasco Ins. Co. v. Tufano*, 63 N.E.3d 985, 995 (Ill. App. Ct. 2016) (finding that the most the insured was entitled to was the limit of the underinsured motorist policy despite separate calculations for multiple tortfeasors that rendered a total in excess of the limit). Nor is the apportionment of the payment among Defendants at issue. *See* Doc. 1 at 7 (asking only for declaratory judgment that the UIM coverage limit under the Policy is $100,000 per accident and that is the most Progressive will be required to pay).

an <u>un</u>insured driver is also necessarily <u>under</u>insured. *Id.* at 1065, 1067. The court agreed with the insurer that K.S.A. § 40-284(d) "clearly and unambiguously" limited Brown's recovery to the policy limit—one payment of $100,000. *Id.* at 1068.

Defendants attempt to distinguish *Brown* because there was only one tortfeasor in that case. But *Brown* was premised on an attempt to cast one tortfeasor as both an uninsured and an underinsured motorist—essentially a legal fiction construing one tortfeasor as two. And the holding in *Brown* was based on the language of K.S.A. § 40-284(d), which restricted the amount payable to the "highest limits of any single applicable policy 'regardless of the number of policies involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid or vehicles involved in an accident.'" *Id.* (quoting K.S.A. § 40-284(d)). Because Brown had already recovered the policy limit in uninsured benefits, she was not eligible to recover any amount in UIM benefits. *Id.* Thus, the holding in *Brown* turned on the limit of the policy and not the number of tortfeasors.

Notably, the Kansas Court of Appeals reached a similar result in a later case that did involve multiple tortfeasors—one underinsured and one uninsured. *See Bigby v. Farmers Ins. Co.*, 2009 WL 2902589, at *1 (Kan. Ct. App. 2009).[4] The court rejected the plaintiff's attempt to multiply her coverage because it "ignore[s] the contractual language restricting total recovery to the stated limits of liability applicable to her policy." *Id.* at *3. *Bigby* further stated that the number of tortfeasors involved does not affect the operation of K.S.A. § 40-284(d). *Id.* at *4; *see also Kerns v. All. Indem. Co.*, 515 S.W.3d 254, 260-64 (Mo. Ct. App. 2017) (applying Kansas law and rejecting argument that the existence of more than one tortfeasor justified payments in excess of

---

[4] *Bigby* is an unpublished opinion, but the Court may still rely on it as persuasive authority. *See* Kan. Sup. Ct. R. 7.04(g)(2).

8

policy limits); *Ill. Emcasco Ins.*, 63 N.E.3d at 994 ("Where multiple tortfeasors are involved in an accident in which an underinsured-motorist policyholder is injured, the policyholder must be placed in the same position as if <u>each</u> tortfeasor carried the same amount of insurance as the policyholder. . . . But the amount of coverage the policyholder can receive from the underinsured-motorist carrier is capped by the overall limit of the underinsured-motorist policy, because the insurer should not be required to pay a policyholder more than it promised, or more than the amount for which the policyholder paid in premiums.").

Defendants nevertheless argue that UIM coverage for each individual tortfeasor must be calculated separately, and the policy limits only apply to each one of those calculations. In other words, as long as the calculated payment attributable to any one underinsured tortfeasor does not exceed the policy limit, then the policy limits are not exceeded even if the aggregate amount the insurer has to pay under the UIM provision does exceed policy limits. But even if this were the correct method of calculation, requiring the insurer to pay more than policy limits is contrary to the plain language of the "LIMITS OF LIABILITY" provision, as well as K.S.A. § 40-284(d) and the authorities cited above. Under both the Policy and Kansas law, the "most" Progressive is obligated to pay is the UIM policy limit "regardless of" the number of claims made, insured persons, lawsuits brought, or vehicles involved.[5] This would be true even if the UIM coverage for each individual tortfeasor was calculated separately. Defendants' position, which seeks in excess of the policy limits, cannot be reconciled with this provision.

---

[5] Defendants argue that neither the "LIMITS OF LIABILITY" provision nor K.S.A. § 40-284(d) limit coverage based on the number of "tortfeasors." Doc. 27 at 16. But both provisions do limit coverage to the policy limit regardless of the number of claims made, lawsuits brought, premiums paid, or vehicles and policies involved. The Court declines to adopt Defendants' semantic argument when the plain language limits coverage to $100,000 per accident.

Nor do the authorities relied on by Defendants support the conclusion that the aggregate amount of UIM benefits can exceed the policy limit as long as the limits are not exceeded for each individual tortfeasor. In *Allied Mutual Insurance Co. v. Gordon*, one tortfeasor (West) paid the injured party the full $20,000 he owed, and the other tortfeasor (Gordon) paid only $60,000 of the $180,000 he owed, per his policy's limit. 811 P.2d 1112, 1114-15 (Kan. 1991). The injured party then sued his insurer for UIM coverage under his policy, claiming that he was entitled to the maximum $100,000 in UIM coverage minus only the $60,000 paid by the underinsured Gordon. *Id.* at 1121. The insurer argued that the UIM payout should also be reduced by the $20,000 paid by West. *Id.* at 1116. The Kansas Supreme Court rejected the insurer's argument, stating that the "right to collect uninsured motorist benefits is based on the fault of the uninsured motorist without regard to negligence and liability of others." *Id.* at 1123. It concluded that UIM coverage should be determined considering only Gordon's payment and not West's payment because West was not underinsured. *Id.* at 1123-24. The insurer was therefore required to pay $40,000 in UIM benefits ($100,000 limit minus Gordon's $60,000 payment). *See id.* at 1125.

Defendants argue that "the injured party in *Gordon* was eligible for $120,000 . . . which is above the highest applicable limit." Doc. 29 at 6. But that $120,000 appears to be a combined payment from the two tortfeasors ($20,000 paid by West and $60,000 paid by Gordon) plus $40,000 paid by the insurer under the UIM provision. The insurer was not required to pay in excess of the policy limits. Further, the issue in *Gordon* is not like the issue here, as it involved a setoff provision that purported to limit underinsured motorist coverage by any amounts paid by other liable parties regardless of whether they were underinsured motorists. *See* 811 P.2d at 1124. Whether aggregated UIM claims can exceed policy limits was not at issue.

Defendants' reliance on *Stafford v. State Farm Mutual Automobile Insurance Co.* is equally unavailing. There, Stafford was killed in a two-car accident where both drivers were under the influence. 1 P.3d 924, 925 (Kan. Ct. App. 2000). Both drivers had liability limits of only $25,000, which was paid to Stafford's family. *Id.* Stafford's family then sought UIM coverage from their own insurance policy, which had a $50,000 limit. *Id.* The insurer argued that it was only required to pay $25,000 in UIM coverage, which represented the $50,000 UIM policy limit minus the $25,000 limit of the tortfeasors' insurance policies. *Id.* at 926. Stafford's family argued that the insurer was required to calculate UIM benefits separately for each tortfeasor, resulting in a net payment of $50,000. *Id.*[6] Citing *Gordon*, the majority agreed with Stafford's family. *Id.* at 927.

Like with *Gordon*, Defendants argue that *Stafford* allowed an insured to receive an amount that exceeds policy limits. *See* Doc. 29 at 6 ("In *Stafford*, the applicable limits were $25,000, $25,000, and $50,000. . . . But Stafford was authorized to recover $100,000 total, which is well above the single highest limit."). But the $100,000 Stafford's family received did not come from one source—it came from three. And each of the three sources paid its maximum policy limit, but nothing more. Thus, again, the insurer was not required to pay in excess of policy limits even though the UIM payments were calculated separately.

A dissenting opinion in *Stafford* also criticized the majority's calculation method—which is the method Defendants urge here—because it meant that "underinsured motorist coverage would fluctuate, depending on the number of tortfeasor drivers involved in an accident." *Stafford*, 1 P.3d at 928 (Green, J., dissenting). The dissent stated that the insured should not be able to collect twice under their UIM coverage and noted that K.S.A. § 40-284(d) "prohibits the stacking of

---

[6] "Based on the parties' agreement that the Staffords would recover damages in excess of $100,000, the calculation for Morris provides a payment of $25,000—$50,000 of underinsured motorist coverage minus the $25,000 received from Morris' insurance. The same calculation applies to Hight, whose insurance also paid $25,000. These calculations provide a net payment of $50,000." *Stafford*, 1 P.3d at 926.

11

underinsured motorist coverages." *Id.* The dissent in *Stafford* stated that the majority's holding would allow a "modified form of stacking" when multiple tortfeasors are involved, despite the fact that Kansas clearly prohibits stacking coverage. *Id.*[7]

The Court finds the dissent's reasoning in *Stafford* persuasive. Allowing a policy "limit" to rise or fall depending on the number of tortfeasors is contrary to both the express terms of the Policy and K.S.A. § 40-284(d), both of which set an upper limit on coverage regardless of how many claims are made or how many vehicles are involved.[8] Further, all Progressive is required to provide under Kansas law is a policy containing "a provision with coverage limits equal to the limits of liability coverage for bodily injury or death in such automobile liability insurance policy." K.S.A. § 40-284(a) (addressing uninsured motorist coverage); *see also id.* at § 40-284(b) (requiring underinsured motorist coverage equal to the limits of uninsured motorists). The limits of liability coverage in the Policy is $100,000 per accident, *see* Doc. 25-8 at 1, which is what Progressive is offering in UIM benefits.

Nor is the Court persuaded by Defendants' argument that Progressive is improperly creating a new exclusion of UIM coverage beyond those listed in K.S.A. § 40-284(e). Defendants rely primarily on *Stewart v. Capps*, 802 P.2d 1226 (Kan. 1990), to argue that any exclusions not listed in K.S.A. § 40-284(e) must be strictly construed. But *Stewart* involved a policy that offset UIM coverage against any payment made under the liability provision. 802 P.2d at 1227-28. The

---

[7] Defendants dispute that what they are attempting to do constitutes "stacking" and argue that K.S.A. § 40-284(d) (and presumably also the "LIMITS OF LIABILITY" provision) therefore doesn't apply. But regardless of what it is called, both the Policy and the statute limit UIM coverage to the policy limit and attempts to exceed that policy limit go against the plain language of both the Policy and the statute. *See Ill. Emcasco Ins.*, 63 N.E.3d at 988 n.1 ("Because this issue is distinguishable from the issue of interpreting an antistacking provision in the context of an insured who has multiple policies, we choose to refer to the provision as the 'limit of liability provision.'").

[8] Given that insurers are mandated by law to provide coverage for uninsured and underinsured motorist coverage, *see* K.S.A. § 40-284(a) and (b), allowing coverage limits to vary based the number of vehicles involved in an accident—something entirely beyond anyone's control, including insurers—would seem to make it very difficult for insurers to price such coverage.

court did note that "[a]ny term of an insurance policy that limits the statutorily required uninsured motorist coverage must be strictly construed." *Id.* at 1230. But as discussed, UIM coverage is not being limited or excluded here. Progressive is offering the full amount of UIM coverage provided in the policy—$100,000 per accident—which is what it is statutorily required to provide. *See* K.S.A. § 40-284(a)-(b).

## IV.  CONCLUSION

THE COURT THEREFORE ORDERS that Plaintiff Progressive Northwestern Insurance Company's Motion for Summary Judgment (Doc. 24) is GRANTED. The Court finds that the Policy provides UIM coverage up to a maximum of $50,000 each person/$100,000 each accident, regardless of the number of insureds, UIM claims, or vehicles involved in the accident. Judgment shall be entered in favor of Progressive.

THE COURT FURTHER ORDERS that Defendant Korey Woods' Motion for Summary Judgment (Doc. 26) is DENIED.

THE COURT FURTHER ORDERS that this case is closed.

IT IS SO ORDERED.

Dated: March 30, 2023                               /s/ *Holly L. Teeter*
                                                    HOLLY L. TEETER
                                                    UNITED STATES DISTRICT JUDGE